# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: August 8, 2019

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | |
| TIMOTHY GODDARD, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 18-1873V |
| | * | |
| v. | * | Special Master Gowen |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | * | Reasonable Basis; Influenza ("Flu"); |
| | * | Bell's Palsy. |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

Shealene P. Mancuso, Muller Brazil, LLP, Dresher, PA, for petitioner.
Adriana R. Teitel, United States Department of Justice, Washington, DC, for respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

      On December 6, 2018, Timothy Goddard ("petitioner") filed a petition in the National Vaccine Injury Compensation Program.[2]  Petitioner alleged that as a result of an influenza ("flu") vaccination received on August 31, 2016, petitioner developed Bell's Palsy with residual injuries and/ or complications lasting for more than six months.  Petition (ECF No. 1) at Preamble, ¶ 7. Petitioner now seeks an award of attorneys' fees and costs.  For the foregoing reasons, I find that there was reasonable basis for filing the petition and throughout its very limited pendency. Accordingly, I award $7,917.37 in reasonable attorneys' fees and costs.

---

[1] Pursuant to the E-Government Act of 2002, *see* 44 U.S.C. § 3501 note (2012), because this opinion contains a reasoned explanation for the action in this case, I am required to post it on the website of the United States Court of Federal Claims.  The court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7.  **This means the opinion will be available to anyone with access to the Internet.**  Before the decision is posted on the court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  An objecting party must provide the court with a proposed redacted version of the opinion.  *Id.*  **If neither party files a motion for redaction within 14 days, the opinion will be posted on the court's website without any changes.**  *Id.*

[2] The Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 *et seq.* (hereinafter "Vaccine Act" or "the Act").  Hereafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

## I.      Summary of Relevant Medical Records

On August 31, 2016, petitioner received an inactivated quadrivalent influenza ("flu") vaccine at issue at a local pharmacy.  Pet. Ex. 1 at 1.

On November 8, 2016, petitioner presented to a hospital emergency room with a five-day history of right-sided facial droop, right eye irritation, poor appetite, malaise, and a rash over the right external ear.  The emergency room physician observed a "classic shingles[3] vesicular rash to R external ear and auditory canal."  Pet. Ex. 2 at 13.  His assessment was "R facial nerve palsy with shingles rash to R ext ear – Ramsay Hunt[4] sx.[5]"  *Id.* at 14.  A neurologist was consulted and agreed with that assessment.  The final impression was "facial nerve palsy" and "Ramsay Hunt syndrome (geniculate herpes zoster)."  The discharge instructions given to petitioner provided that he had "shingles" and "Bell's palsy."[6]  Petitioner was prescribed a seven-day course of valcyclovir[7] as well as erythromycin,[8] and was instructed to follow up with an eye care specialist.  Pet. Ex. 2.

On November 14, 2016, petitioner presented to an optometrist who diagnosed a central corneal ulcer[9] in the right eye.  The optometrist recommended continuation of valcyclovir and antibiotics; he also referred petitioner to an ophthalmologist.  Pet. Ex. 3.

Also on November 14, 2016, petitioner presented to the ophthalmologist, who recorded complaints of discomfort and pain in the right eye.  The ophthalmologist's impression was a marginal corneal ulcer in the right eye, Bell's palsy involving a rash on the right ear, keratoconjunctivitis,[10] and varicella zoster infection.  He recommended continuing valcyclovir and antibiotics.  Pet. Ex. 4 at 1-3.

---

[3] Shingles is another term for the zoster strain of the herpes virus, which is an inflammatory skin disease.  Herpes zoster is "an acute, infectious, usually self-limited disease believed to represent activation of latent human herpes virus 3 in those who have become partially immune after an attack of chickenpox."  *Dorland's Illustrated Medical Dictionary* 32nd Ed. (2012) (hereinafter "*Dorland's*") at 852, 1701.  Chickenpox is another term for varicella, a highly contagious infectious disease caused by human herpes virus.  *Dorland's* at 342.

[4] Ramsay Hunt syndrome is herpes zoster involving nerves in the face and the ear.  It is often associated with facial paralysis and inflammation of the external ear.  *Dorland's* at 1845.

[5] "Sx" is a medical abbreviation for "symptoms."

[6] Bell's palsy is a unilateral facial paralysis of sudden onset due to lesion of the facial nerve and resulting in characteristic distortion of the face.  *Dorland's* at 1365.

[7] Valcyclovir is an antiviral drug that is administered orally and used for the treatment of herpes zoster in immunocompetent adults.  *Dorland's* at 2020.

[8] Erythromycin is an antibiotic that is effective against a broad spectrum of bacteria.  *Dorland's* at 645.

[9] Keratitis is defined generally as inflammation of the cornea.  The sub-type ulcerative keratitis (also referred to as corneal ulcer) involves the complication of ulceration of the corneal epithelium.  *Dorland's* at 979-80, 1996.

[10] Keratoconjunctivitis is inflammation of the cornea as well as the conjunctiva.  *Dorland's* at 405, 980.

Petitioner continued treatment and monitoring with the ophthalmologist. At the beginning of that course, petitioner experienced right eye pain, itching, tearing, and blurry vision. Various adjustments were made to petitioner's medication. Additionally, in December 2016, petitioner underwent a tempary partial tarsorrhaphy[11] to facilitate healing of the corneal ulcer. Pet. Ex. 4 at 38-40. Over seven months after the initial onset, on July 7, 2017, the ophthalmologist recorded that petitioner was "gradually improving" but was still experiencing symptoms including discharge, dry and crusty eye, light sensitivity. Petitioner was still using erythromycin and artificial tear eye drops. Pet. Ex. 6 at 46-49.

## II. Procedural History

On December 6, 2018, petitioner, through the current counsel of record, timely filed the petition in the Vaccine Program. Petition (ECF No. 1). The petition requests compensation for Bell's palsy resulting from the adverse effects of the influenza vaccine received on August 31, 2016. *Id.* at Preamble. The petition refers to the hospital records which reflect that the onset of symptoms of the alleged vaccine injury was approximately November 3, 2016 (64 days after the vaccination). *Id.* at ¶ 3. The petition was accompanied by supporting medical records and a statement of completion (ECF No. 2).

Following petitioner's filing of the statement of completion, I suspended the deadline for respondent to file his formal report pursuant to Vaccine Rule 4(c) (which requires respondent to file a report "setting forth a full and complete statement of its position as to why an award should or should not be granted"). However, I required respondent to file a status report indicating that respondent, or at a minimum, respondent's counsel has conducted a preliminary review of the claim to assess whether there were any missing records and whether respondent would be amenable to informal resolution. I ordered respondent to file this status report within 60 days, by February 5, 2019. *See* Initial Order entered December 7, 2018 (ECF No. 5); Scheduling Order entered December 7, 2018 (Non-PDF).

On February 5, 2019, respondent duly filed the status report, which provided that medical personnel at the Division of Injury Compensation Programs, Department of Health & Human Services had completed their review of the case. While respondent reserved the right to supplement the status report, respondent's counsel Ms. Teitel offered her preliminary review of the case. She did not identify any critical missing records. She noted that petitioner's treating physicians attributed the alleged vaccine injury to herpes zoster. Additionally, in 2012, the Institute of Medicine concluded that the available epidemiologic and mechanistic evidence favored rejection of a causal relationship between inactivated flu vaccine [which petitioner received] and Bell's palsy. For those reasons, respondent's counsel predicted that it was unlikely that her client would be "interested in pursuing an early informal resolution of this matter." Resp. Status Report filed February 5, 2019 (ECF No. 8).

On March 4, 2019, I held an initial status conference with both parties' counsel. It was discussed that the medical records contained diagnoses of both Ramsay Hunt syndrome and Bell's palsy, but the treating physicians consistently attributed the injury to varicella (chicken

---

[11] Tarsorrhaphy is a procedure in which the upper and lower eyelids are sutured together. *Dorland's* at 1872.

pox) and herpes zoster.  I acknowledged respondent's point that the IOM currently favors rejection of a causal relationship between inactivated influenza virus and Bell's palsy.  I also stated that the 64 days between the flu vaccine and the onset of petitioner's symptoms was more attenuated than I would generally expect to see for a viable claim in the Vaccine Program. Petitioner, represented by her counsel of record, indicated that an expert with experience in the Vaccine Program had already conducted a preliminary review and had expressed willingness to support the claim.  I directed petitioner to seriously consider the identified issues before deciding whether to proceed.  I directed petitioner to either discontinue the claim or file a status report confirming that the claim had support from an expert within 30 days, by April 4, 2019.  If petitioner filed an expert report, respondent would then have the opportunity to file a responsive expert report and the Rule 4(c) report.  Scheduling Order filed March 5, 2019 (ECF No. 9). Petitioner requested and received a 45-day extension of time to determine how to proceed.  Pet. Mot. filed April 4, 2019 (ECF No. 10); Order filed April 4, 2019 (ECF No. 11).

Petitioner then filed a motion for a decision to dismiss the petition.  Pet. Mot. filed April 25, 2019 (ECF No. 12).  I issued a decision dismissing the petition for insufficient proof. Decision filed April 25, 2019 (ECF No. 13).

On July 26, 2019, petitioner filed an application for attorneys' fees and costs ("Pet. Fee App.") (ECF No. 16).  Petitioner requested $7,369.80 in attorneys' fees and $547.57 in attorneys' costs, for a total attorneys' fees and costs request of $7,917.37.  *Id.* at 2.  Petitioner's counsel averred that pursuant to General Order No. 9, petitioner did not advance any funds in the prosecution of the claim, as all expenses were incurred by the attorney of record.  *Id.*

Also on July 26, 2019, respondent filed a response to petitioner's fee application.  Resp. Response (ECF No. 17).  Respondent "question[ed] whether the case record is sufficient to establish a reasonable basis existed for bringing this claim," for the issues discussed during the initial status conference.  *Id.* at 2.  Respondent also noted that petitioner did not submit an expert report in support of the claim.  *Id.* at 2-3.  Respondent provided that if the Court determines that there was reasonable basis for bringing the claim, respondent respectfully requests that the Court exercise its discretion and determine a reasonable award for attorneys' fees and costs.  *Id.* at 4.

On July 30, 2019, my law clerk received an email from petitioner's counsel indicating that she would not be filing a reply.  This matter is ripe for adjudication.

## III.    Entitlement to Attorneys' Fees and Costs

### A.  Legal Standard

The Vaccine Act permits an award of "reasonable attorneys' fees" and "other costs."  42 U.S.C. §§ 300aa-15(e)(1).  If a petitioner succeeds on the merits of his or her claim, the special master shall award reasonable attorneys' fees and costs.

However, a petitioner need not prevail on entitlement to receive a fee award as long as "the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim."  § 15(e)(1).  The Federal Circuit reasoned that in formulating this standard, Congress intended "to ensure that vaccine injury claimants have readily available a

competent bar to prosecute their claims." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1362 (Fed. Cir. 2012).

"Good faith" and "reasonable basis" are two distinct requirements. *Simmons v Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (citing *Chuisano v. Sec'y of Health & Human Servs.*, 116 Fed. Cl. 276, 289 (2014)). Good faith is a subjective inquiry. *Id.*

In contrast to good faith, "reasonable basis" is an objective consideration which "looks not at the likelihood of success" but rather to the "feasibility of the claim." *Chuisano*, 116 Fed. Cl. at 286. In evaluating reasonable basis, the special master may not consider the statutory limitations deadline or related conduct by counsel. *Simmons*, 875 F.3d 632 at 636. However, the special master may consider many other objective factors including the "the factual basis of the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 289 (2018). The reasonable basis inquiry is "broad enough to encompass any material submitted in support of the claim at *any* time in the proceeding, whether with the petition or later." *Chuisano*, 116 Fed. Cl. at 287 (emphasis added).

Indeed, a petitioner is not required to file a petition with medical records or an expert report in order to meet the reasonable basis standard. *See McKellar v. Sec'y of Health & Human Servs.*, 101 Fed. Cl. 297, 303 (2011); *see also Carter v. Sec'y of Health & Human Servs.*, 132 Fed. Cl. 372, 382 (2017). Related to that point, counsel has some obligation to investigate the claim and what issues may represent obstacles to compensation both before and after filing; however, reasonable basis is ultimately established by objective proof for the claim, as emphasized by the Federal Circuit. *Smith v. Sec'y of Health & Human Servs.*, No. 17-1169V, 2019 WL 1953358 at *2 (Fed. Cl. Spec. Mstr. March 29, 2019) (citing *Simmons*, 875 F.3d at 636).

## B. Application

Here, respondent does not expressly argue that there was no reasonable basis for this claim. Respondent did not raise reasonable basis in his status report or at the initial status conference. Rather, in response to petitioner's fee application, petitioner noted the discussion at the initial status conference and the lack of an expert report in support of petitioner's claim. Ultimately, respondent requested that I determine whether the record supports reasonable basis. Resp. Response at 2-3.

The record reflects that petitioner received a flu vaccine and developed symptoms approximately 64 days later. Shortly thereafter, petitioner was diagnosed with Ramsay-Hunt syndrome, then with Bell's palsy. Respondent's counsel noted that in 2012, the IOM's view was that the available evidence favored a rejection of a causal relationship between inactivated flu vaccine and Bell's palsy. The treating physicians attributed the clinical picture to a herpes zoster infection, while they did not run any bloodwork or other testing to confirm the presence of that infection. Upon my initial review, I did question the temporal relationship between the flu vaccine and the onset of petitioner's symptoms. However, within the Vaccine Program, past petitions for Bell's palsy following flu vaccine have been compensated via informal resolution.[12]

---

[12] *See, e.g., Lee v. Sec'y of Health & Human Servs.*, No. 17-504V, 2018 WL 6825141 (Fed. Cl. Spec. Mstr. Nov. 28,

I did not locate reasoned opinions on flu vaccine and Bell's palsy.  It is feasible that, with support from an expert, a petitioner could successfully claim that a flu vaccine can and did cause Bell's palsy, which is an immune-mediated process.  Indeed, in this case, an expert with experience in the Vaccine Program performed a preliminary review and initially indicated that he would support vaccine causation.  Accordingly, I find that there was a reasonable basis for petitioner to file the petition.

This claim maintained reasonable basis until petitioner was unable to obtain a supportive expert opinion.  Respondent's counsel indicated that her client was unlikely to support informal resolution at the initial stage.  In my own review of the case, I observed that the treating physicians did not draw an association between the flu vaccine and the alleged injury and that onset was attenuated.  Accordingly, petitioner was directed to obtain an expert's report addressing these issues.  Petitioner's counsel did take those issues to the expert who had supported the claim before filing.  Apparently, upon a more detailed review, the expert determined that he would not support the case.  Petitioner's counsel also consulted several other experts.  When counsel could not obtain a supportive expert report, reasonable basis was lost. Afterwards, counsel helped petitioner to dismiss the claim.  The resulting fees were related to "wrapping up" the case and therefore counsel should be compensated.  *See, e.g.*, *Woolf v. Sec'y of Health & Human Servs.*, No. 17-908V, 2019 WL 2498774 (Fed. Cl. Spec. Mstr. May 23, 2019); *Swick v. Sec'y of Health & Human Servs.*, No. 13-526V, 2018 WL 6009290, at *6 (Fed. Cl. Spec. Mstr. Oct. 22, 2018).

## IV.    Reasonable Attorneys' Fees and Costs

### A.  Legal Standard

As stated above, the Vaccine Act only authorizes "reasonable" attorneys' fees and costs. The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act.  *Avera*, 515 F.3d at 1349.  Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Id.* at 1347-58 (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings.  *Id.* at 1348.  Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as to fees.  *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994).

Special masters have "wide discretion in determining the reasonableness of both attorneys' fees and costs."  *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed.  *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d

2018); *Merritt v. Sec'y of Health & Human Servs.*, No. 15-1545V, 2018 WL 4558393 (Fed. Cl. Spec. Mstr. Aug. 28, 2018); *Nizza v. Sec'y of Health & Human Servs.*, No. 16-838V, 2017 WL 3496383 (Fed. Cl. Spec. Mstr. July 21, 2017); *Suomala v. Sec'y of Health & Human Servs.*, No. 16-1210V, 2017 WL 1215781 (Fed. Cl. Spec. Mstr. March 9, 2017).

1517, 1521 (Fed. Cir. 1993). A line-by-line evaluation of the billing records is not required. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (1991), *aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993 (per curiam).

The petitioner "bea[rs] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson*, 24 Cl. Ct. at 484. Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484, n. 1. Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

## B.  Hourly Rates

Petitioner requests that the attorney of record Ms. Shealene Mancuso receive hourly rates of $225.00 for work performed in 2017, $233.00 for 2018, and $250.00 for 2019. Petitioner requests for Ms. Amy Senerth $225.00 for work performed in 2017 and for Mr. Paul Brazil $317.00 for work performed in 2018. Petitioner requests $125.00 - $140.00 per hour for all paralegal work performed. Pet. Fee App. at 5-9.

I, as well as other special masters, have found these rates to be reasonable and have accordingly awarded them. *See, e.g.*, *Foshee-Naughton v. Sec'y of Health & Human Servs.*, No. 17-1366V, 2019 WL 3239281 (Fed. Cl. Spec. Mstr. June 25, 2019); *Kodimer v. Sec'y of Health & Human Servs.*, No. 17-140V,2019 WL 3074015 (Fed. Cl. Spec. Mstr. June 17, 2019); *Silver v. Sec'y of Health & Human Servs.*, No. 17-1204V, 2019 WL 2158875 (Fed. Cl. Spec. Mstr. Apr. 30, 2019); *Prestia v. Sec'y of Health & Human Servs.*, No. 17-013V, 2019 WL 2158835 (Fed. Cl. Spec. Mstr. Apr. 25, 2019). I find that is also appropriate in the present case. Therefore, the rates are approved without adjustment.

## C.  Hours Expended

As previously noted, a line-by-line evaluation of the fee application is not required and will not be performed. *Wasson*, 24 Cl. Ct. at 484. Rather, similar to a trial court judge, a special master may rely on my experience to evaluate the reasonableness of hours expended and reduce to what I find to be reasonable. *Saxton*, 3 F.3d at 1521. Upon review, I find that the billed hours (38.4) are adequately documented, not duplicative, and generally reasonable. Accordingly, the costs will be awarded in full. Petitioner is awarded attorneys' fees in the amount of **$7,369.80**.

## D.  Costs

Like attorneys' fees, costs incurred - by counsel or petitioners themselves – must also be reasonable. *Perreira*, 27 Fed. Cl. 29, 34. Here, petitioner requests $547.57, representing the costs of filing the petition, obtaining the medical records, and having a registered nurse review the file to ensure there were no missing records. Pet. Fee App. at 11-16. These costs are adequately documented and reasonable. Therefore, I award the attorneys' costs of **$547.57** without adjustment.

## V.      Conclusion

In accordance with the foregoing, petitioner's application for attorneys' fees and costs is **GRANTED**.  I award the following reasonable attorneys' fees and costs:

| | |
|---|---|
| **Attorneys' Fees Awarded:** | **$7,369.80** |
| **Attorneys' Costs Awarded:** | **$  547.57** |
| <u>**Attorneys' Fees and Costs Awarded:**</u> | <u>**$7,917.37**</u> |

Accordingly, I award the following:

1) **A lump sum in the amount of $7,917.37, representing reimbursement for attorneys' fees and costs, in the form of a check payable jointly to petitioner and petitioner's counsel Shealene P. Mancuso of Muller Brazil, LLP.**[13]

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court shall enter judgment in accordance herewith.[14]

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>
Thomas L. Gowen
Special Master

---

[13] This amount is intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered.  Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein.  *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[14] Entry of judgment is expedited by each party's filing notice renouncing the right to seek review.  Vaccine Rule 11(a).